## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SYLVIA LOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | CIV-18-1176-PRW |
| | ) | |
| | ) | |
| THE CITY OF OKLAHOMA CITY, | ) | |
| A municipal corporation; AMERICAN | ) | |
| FEDERATION OF STATE, COUNTY | ) | |
| AND MUNICIPAL EMPLOYEE | ) | |
| (AFSCME), AFL-CIO, LOCAL 2406; | ) | |
| and BRUCE DAVIS, AFSCME | ) | |
| President, in his official capacities, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

## ORDER

Plaintiff was a civilian employee of Defendant the City of Oklahoma City ("Oklahoma City") working as a Police Identification Technician. Her employment ended with Oklahoma City on August 22, 2018. Plaintiff alleges her termination was the result of unlawful racial discrimination and retaliation by Oklahoma City in violation of 42 U.S.C. § 2000e, *et. seq*., or Title VII. Plaintiff also seeks relief against Defendant American Federation of State, County, and Municipal Employees ("AFSCME") for its alleged breach of collective bargaining agreement and its duty of fair representation in violation of 29 U.S.C. § 185(a). Oklahoma City has now filed a Motion for Summary Judgment (Dkt. 31) alleging the undisputed material facts entitle it to judgment as a matter of law. For the reasons stated below, the motion is granted in part and denied in part

## *Background*

Plaintiff is an African American former employee of Oklahoma City. On January 24, 2018, she was involved in an incident at work with another employee with the same job title, Jennifer Hudson. According to Plaintiff, she was at the timeclock when Hudson approached her and asked for her password. Plaintiff refused, and Hudson yelled and spoke disparaging remarks about Plaintiff under her breath. Plaintiff emailed her supervisor that same day to report the misconduct. An investigation was conducted, headed by Captain Vashina Butler. According to Oklahoma City, the investigation revealed that Plaintiff violated numerous policies by lying, neglecting her duties, making a frivolous and slanderous complaint against Hudson, and engaging in conduct that was unbecoming of a police employee. After a Pre-Determination hearing, Plaintiff was ultimately terminated for these sustained allegations.

Another investigation happened simultaneously with the January 24, 2018, incident investigation. Oklahoma City's ethics hotline was alerted that Hudson had allegedly sexually harassed other employees. An investigation was launched, and over fifty people were interviewed, including Plaintiff. The allegations were sustained, and Hudson was fired for policy violations stemming from her sexual harassment.

Plaintiff asserts that her termination was the result of racial discrimination and retaliation in violation of Title VII. She argues that her termination evidences that Hudson, a Caucasian employee in the same employment position and who committed the same policy violations, was treated more favorably than her, an African American. Moreover,

she argues that her termination was the result of retaliation by Oklahoma City for her participation in the Hudson sexual harassment investigation.

## Standard of Review

Fed. R. Civ. P. 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the court does not weigh the evidence and determine the truth of the matter asserted, but determines only whether there is a genuine dispute for trial before the fact-finder.[1] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[2] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[3] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[4]

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely in dispute and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[4] *Id.*

the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[5] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts,"[6] or by theorizing a "plausible scenario" in support of its claims.[7] "Rather, 'the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[8] If there is a genuine dispute as to some material fact, the district court must consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party.[9]

Furthermore, the Supreme Court explains:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the

[5] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. 317; *Beard v. Banks*, 548 U.S. 521, 529 (2006).

[6] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995)).

[7] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[8] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52; *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

[9] *Scott*, 550 U.S. at 380; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.[10]

### *Exhaustion of Administrative Remedies*

Oklahoma City argues that Plaintiff's claims of race and disability discrimination must be dismissed because Plaintiff failed to exhaust her administrative remedies in that "[n]one of the allegations raised in Count One and Count Five of her Complaint . . . can reasonably be expected to flow from the charge of discrimination Plaintiff submitted to the EEOC . . . ."[11]

First, Plaintiff notifies the Court that she withdraws her claim of disability discrimination, so Count 5 in the Complaint is accordingly dismissed.[12] Second, Plaintiff asserts that Oklahoma City waived the affirmative defense of failure to exhaust administrative remedies by failing to assert it in its answer.[13]

---

[10] *Celotex Corp.*, 477 U.S. at 322–23; *see Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 603 (10th Cir. 2019) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)) ("[I]f the movant will not bear the burden of persuasion at trial, it can meet this initial burden 'simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.' It 'need not negate the nonmovant's claim.'").

[11] Def. City's Mot. for Summ. J. & Br. in Supp. (Dkt. 31) at 18.

[12] Pl. Sylvia Lott's Obj. to Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50) at 9, n. 1.

[13] *Id*. at 24–25.

Plaintiff is correct that failure to exhaust administrative remedies is an affirmative defense[14] that is generally waived unless asserted in a responsive pleading.[15][16] Thus, even assuming Plaintiff did not properly exhaust her administrative remedies as to her racial discrimination claim, Oklahoma City waived this affirmative defense by failing to assert it in a responsive pleading.[17] The motion for summary judgment on this basis is therefore denied.

### Race Discrimination/Disparate Treatment

Oklahoma City next argues that Plaintiff's Title VII claim of racial discrimination based on disparate treatment should be dismissed because she fails to establish a prima facie case.[18]

---

[14] *See Lincoln v. BNSF Rwy.*, 900 F.3d 1166, 1185–86 (10th Cir. 2018) ("[A] plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust . . . ."); *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1163–64 (10th Cir. 2018).

[15] *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("Ordinarily, it is incumbent on the defendant to plead and prove [an affirmative defense]."); *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009) ("The general rule is that a party waives its right to raise an affirmative defense at trial when the party fails to raise the defense in its pleadings."); Commentary to Fed. R. Civ. P. 8 ("The general rule is that parties forfeit, or waive, unpleaded affirmative defenses.").

[16] Although this is the general rule, the liberal pleading standards also apply to affirmative defenses, so the purpose of the rule to give the opposing party notice of the affirmative defense in order to prepare for trial should be considered in determining whether an affirmative defense has been fairly asserted. *See Creative Consumer Concepts, Inc.*, 563 F.3d at 1076 (internal citation omitted). Here, Oklahoma City's answer does not give Plaintiff fair notice that it intended to raise this affirmative defense, so waiver is appropriate.

[17] *See* Answer of Def. City of Okla. City (Dkt. 7) at 9–10.

[18] Def. City's Mot. for Summ. J. & Br. in Supp. (Dkt. 31) at 24.

Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[19] "To survive summary judgment on a Title VII claim of discrimination based on race, color, religion, sex, or national origin, a plaintiff must present either direct evidence of discrimination or indirect evidence that satisfies the [*McDonnell Douglas*] burden-shifting framework . . . ."[20] Plaintiff relies on the latter here, so she bears the burden of raising "a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations."[21] To establish a prima facie case of disparate treatment based on racial discrimination, Plaintiff must show: "(1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class."[22] If Plaintiff raises a genuine issue of material fact as to any of these

---

[19] 42 U.S.C. § 2000e—2(a)(1).

[20] *Juarez v. Utah*, 263 F. App'x 726, 737 (10th Cir. 2008).

[21] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted).

[22] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *see Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998); *see also Raymond v. Select Specialty Hosp. - Tulsa/Midtown, LLC*, 375 F. Supp. 3d 1203, 1212 & n. 2 (N.D. Okla. 2019) (internal citation omitted) ("Plaintiff must 'show, by a preponderance of the evidence, that she is a member of a protected class, she suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination.'") ("While this test has taken many different formulations, all include Plaintiff alleging her membership in a protected class, adverse action, and a nexus between the two. *See, e.g., Dyer v. Lane*, 564 F. App'x 391, 394 (10th Cir. 2014) ("(1) [she] was a member of a protected class; (2) [she] was qualified and satisfactorily performing [her] job; and (3) [she] was terminated under circumstances giving rise to an inference of discrimination; . . . *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005) ("(1) he belongs

elements, then the burden shifts to Oklahoma City "to produce a legitimate, non-discriminatory reason for the adverse employment action."[23] And if Oklahoma City satisfies its burden, then it "reverts to [Plaintiff] to show that there is a genuine dispute of material fact as to whether [Oklahoma City's] proffered reason for the challenged action is pretextual—i.e., unworthy of belief."[24]

Oklahoma City concedes that Plaintiff is (1) a member of a protected class (African American) and (2) suffered an adverse employment action (termination).[25] Oklahoma City also does not challenge whether Plaintiff qualified for the position at issue. Oklahoma City disputes, however, that Plaintiff has evidence that (4) "she was treated differently than other similarly situated employees."[26][27] "Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'"[28] Oklahoma City explains that the only specific employee Plaintiff points to

---

to a protected class; (2) he was qualified for the job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge.")").

[23] *Khalik*, 671 F.3d at 1192.

[24] *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (quoting *Morgan*, 108 F.3d at 1323).

[25] Def. City's Mot. for Summ. J. & Br. in Supp. (Dkt. 31) at 23.

[26] *Id*.

[27] The Complaint makes clear that Plaintiff intends to satisfy this element by showing that similarly situated employees were treated differently. This is not the only way to satisfy this element, but it is what Plaintiff has chosen.

[28] *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007); *Juarez*, 263 F. App'x at 738.

in order to show she was treated less favorably that non-African Americans is Hudson, a Caucasian female employed in the same position as Plaintiff at the time of her employment.[29] But like Plaintiff, Hudson was terminated for policy violations.[30]

Plaintiff responds that while she was terminated "based on allegations that she made false statements," "Hudson . . . was allowed to be a long-standing problem employee at Defendant City, violating just about every policy that Defendant City had written."[31] Plaintiff cites her additional material fact 13 listing (and citing) reports of Hudson's misconduct, to which Oklahoma City only objects to the characterization of a report of Hudson making "false statements."[32][33] Plaintiff also specifically cites Plaintiff's Exhibit 12, an administrative investigation disposition prompted by an anonymous tip that claimed another employee physically assaulted Hudson.[34] Ultimately, the investigation determined that these claims were unsubstantiated.[35] Although Plaintiff seems to suggest that Hudson was the anonymous tipper, she presents no evidence of this. Even so, in Plaintiff's view, "Hudson committed the same policy violation that Defendant City alleges justified

---

[29] Def. City's Mot. for Summ. J. & Br. in Supp. (Dkt. 31) at 23.

[30] *Id*. at 23–24.

[31] Pl. Sylvia Lott's Obj. to Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50) at 27–28.

[32] *Id*. at 28.

[33] Oklahoma City states this report is not of false statements, but instead frivolous complaints.

[34] Memo., The City of Okla. City Police Dep't Re. Disposition of Admin. Investigation IA 13-73 (Dkt. 50-12).

[35] *Id*.

Plaintiff's termination, however the outcomes were blatantly different."[36] Finally, Plaintiff

points to Hudson's employment records that show she committed numerous policy

violations that did not result in her termination.[37]

Viewing all the facts and inferences in the light most favorable to Plaintiff, and

assuming that Hudson is similarly situated to Plaintiff in that she deals with the same

supervisor and is subject to the same standards governing performance evaluation and

discipline, the Court finds that Plaintiff fails to make a prima facie showing of racial

discrimination based on disparate treatment. "[E]ven employees who are similarly situated

must have been disciplined for conduct of 'comparable seriousness' in order for their

disparate treatment to be relevant."[38] Here, Plaintiff was terminated for lying, not being

able to work with others, neglecting her duties, and making frivolous and slanderous

statements against fellow employees, all in violation of Oklahoma City's policies and

rules.[39] Hudson was also terminated for a policy violation, but it was for engaging in sexual

harassment.[40] Plaintiff argues that Hudson's laundry list of other policy violations that did

---

[36] Pl. Sylvia Lott's Obj. to Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50) at 28.

[37] *Id*. (citing The City of Okla. City Performance Development Plan Re. Jennifer Hudson (Dkt. 50-13)).

[38] *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).

[39] *See* Memo., Notification of Pre-Determination (Dkt. 31-18); The City of Okla. City Police Dep't Operations Manual Rule No. 120.0 (Dkt. 31-16) ("Testifying, making reports, or conducting business in a less than truthful and cooperative manner is prohibited.").

[40] *See* City of Okla. City Specific Occurrence Performance Report (SOPR) Re. Jennifer Hudson (Dkt. 31-20). Plaintiff states she disputes Oklahoma City's undisputed material fact that supports this assertion (No. 45) because in her view, findings from the Hudson investigation were not the only reason for her termination. *See* Pl. Sylvia Lott's Obj. to

not result in her termination demonstrate that Plaintiff, an African American, was treated less favorably than Hudson, a Caucasian.[41][42] These policy violations include, but are not limited to: taking too many and too lengthy of breaks,[43] taking personal phone calls,[44] failing to update calls,[45] making unprofessional comments on her unit status screen,[46] failing to attend mandatory training,[47] falling asleep at work,[48] failing to stay on the call with a suicidal caller,[49] sending inappropriate messages,[50] being late to work,[51] arguing

---

Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50) at 18. To support this assertion, Plaintiff cites testimony from a city employee that, according to Plaintiff, "show[s] that Defendant City may not have taken its own sexual harassment policy seriously." *Id*. The cited evidence, however, does not create a fact issue on this point so this material fact is deemed admitted.

[41] Pl. Sylvia Lott's Obj. to Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50) at 28.

[42] Plaintiff highlights *reports* of Hudson's misconduct in her employment records. More relevant to this inquiry, however, are the listed policy violations in Hudson's employment records.

[43] Pl. Sylvia Lott's Obj. to Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50-17); (Dkt. 50-19); (Dkt. 50-21); (Dkt. 50-23); (Dkt. 50-24).

[44] *Id*. (Dkt. 50-17); (Dkt. 50-22).

[45] *Id*. (Dkt. 50-17).

[46] *Id*. (Dkt. 50-17).

[47] *Id*. (Dkt. 50-17).

[48] *Id*. (Dkt. 50-17); (Dkt. 50-21).

[49] *Id*. (Dkt. 50-17).

[50] *Id*. (Dkt. 50-17); (Dkt. 50-19).

[51] *Id*. (Dkt. 50-18); (Dkt. 50-19); (Dkt. 50-23).

with supervisors "to the edge of insubordination,"[52] taking leave without pay,[53] and engaging in conduct unbecoming of an employee.[54]

Notably, Plaintiff attaches no evidence that Hudson ever lied in violation of Oklahoma City's policy. Plaintiff misleadingly cites an administrative investigation disposition prompted by an anonymous tip to show that Hudson made a false statement and was not terminated.[55] The complaint was made by an *anonymous tipper*, not Hudson, and the allegations within were determined to be *unsubstantiated*, not false. Plaintiff also cites one of Hudson's Performance Development Plans that states "[s]he makes frivolous complaints about others,"[56] but a frivolous complaint is not a false complaint.

"[A]t summary judgment, the court must determine whether plaintiff has adduced enough evidence to support a finding that the other employee and plaintiff were sufficiently similarly situated to support an inference of discrimination."[57] Here, even if Plaintiff and Hudson were subject to the same supervisor and policies, Plaintiff presents no evidence that Hudson, or any other non-African American employee, committed conduct analogous to Plaintiff lying in an investigation. Thus, Plaintiff fails to show that Oklahoma City

---

[52] *Id*. (Dkt. 50-20); (Dkt. 50-23).

[53] *Id*. (Dkt. 50-23).

[54] *Id*. (Dkt. 50-25).

[55] Memo., The City of Okla. City Police Dep't Re. Disposition of Admin. Investigation IA 13-73 (Dkt. 50-12).

[56] Pl. Sylvia Lott's Obj. to Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50-13).

[57] *Payan v. United Parcel Serv., No. 19-4017*, 2019 WL 6273389, at *13 (10th Cir. Nov. 25, 2019) (quoting *Riggs v. AirTran Airways, Inc*., 497 F.3d 1108, 1117 (10th Cir. 2007)).

treated similarly-situated employees differently and establish a prima facie case of discrimination. No genuine issue of material fact remains on this issue, so Defendant City is entitled to judgment as a matter of law.

### *Retaliation*

Defendant also asserts that Plaintiff's Title VII claim of retaliation should be dismissed because she fails to establish a prima facie case of the same.[58]

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[59] Because there is no direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies.[60] Plaintiff must establish a prima facie case of retaliation. The burden then shifts to Oklahoma City to provide a legitimate, non-discriminatory justification for Plaintiff's termination. The burden then shifts back to Plaintiff to provide evidence that Oklahoma City's reason is a pretext for discrimination.[61]

To establish a prima facie case of retaliation, Plaintiff must show (1) she engaged in protected activity under Title VII, (2) Oklahoma City took an adverse employment

---

[58] Def. City's Mot. for Summ. J. & Br. in Supp. (Dkt. 31) at 24.

[59] 42 U.S.C. § 2000e—3(a).

[60] *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004).

[61] *Id.* at 1071.

action against her,[62] and (3) a causal connection exists between the protected activity and the adverse action.[63] To satisfy the causation element "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"—"but-for causation."[64] This equates to proof of "'circumstances that justify an inference of retaliatory motive.'"[65] An inference of retaliatory motive often follows when the protected activity is closely followed by the adverse employment action.[66] If this temporal proximity is too attenuated, then Plaintiff must "present 'additional evidence' tying the adverse employment action[] to [Plaintiff's] participation in the [protected activity]."[67]

Oklahoma City concedes that Plaintiff satisfies the first two elements of her retaliation claim, but argues Plaintiff fails to establish the third element.[68] Defendant argues that the temporal proximity of Plaintiff's participation in the Hudson sexual harassment investigation (March 2018) and her termination (August 2018) is "too far apart . . . to

---

[62] *See Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 605–06 (10th Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)) ("For a retaliation claim under Title VII, an adverse employment action is something that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'").

[63] *Stover*, 382 F.3d at 1071.

[64] *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

[65] *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir.2007)).

[66] *Id.*; *see Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (". . . temporal proximity must be 'very close'").

[67] *Ward*, 772 F.3d at 1203.

[68] Def. City's Mot. for Summ. J. & Br. in Supp. (Dkt. 31) at 25.

establish causation" solely on that basis.[69] As a result, Plaintiff must present additional evidence of a causal link between these events.[70]

Oklahoma City also points out that Plaintiff was one of over fifty (50) people interviewed in the Hudson sexual harassment investigation and cannot point to a single other interviewee who was retaliated against for participation in the investigation.[71] In Oklahoma City's view, "[t]here is no evidence that Plaintiff's participation in the [Hudson sexual harassment] investigation was in any way connected to her termination, let alone the 'but for' cause of her termination."[72]

Plaintiff disagrees that March 2018 is the relevant date to determine temporal proximity of her engagement in a protected activity to her termination. She argues that the relevant date is June 8, 2018 because that is when she was interviewed in the Hudson sexual harassment investigation, and thus the date of her engagement in a protected activity.[73] Plaintiff argues that the two and a half month gap between her engagement in a protected activity and her termination, paired with her arguments that Oklahoma City's reasons for her termination were a pretext for retaliation, establish the necessary causal connection for the third element of a prima facie case of retaliation.[74]

---

[69] *Id*. at 26.

[70] *Id*.

[71] *Id*. (citing Def. City's Statement of Material Facts Not in Dispute No. 19).

[72] *Id.*

[73] Pl. Sylvia Lott's Obj. to Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50) at 33–34.

[74] *Id*. at 34.

Viewing all facts and inferences in the light most favorable to Plaintiff, the Court uses June 8, 2018, as the date of the protected activity. Thus, two and a half months passed between Plaintiff's engagement in a protected activity and her termination. Tenth Circuit case law is unclear whether this temporal proximity alone gives rise to an inference of retaliatory motive.[75] The Court need not decide whether the relevant temporal proximity alone establishes causation, however, because Plaintiff presents enough evidence that fairly produces inferences of pretext[76] from which a reasonable jury could find a causal connection exists between Plaintiff's participation in the Hudson sexual harassment investigation and her termination.

The burden accordingly shifts to Oklahoma City to offer evidence of a legitimate, nondiscriminatory reason for terminating Plaintiff. Oklahoma City explains that Plaintiff was terminated for violating policies and rules that came to light in the January investigation.[77] Oklahoma City states that Plaintiff was terminated because "she lied, she cannot work with others, she neglected her duties, and she made frivolous and slanderous statements against fellow employee."[78] For evidentiary support, Oklahoma City cites a

---

[75] *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period between engagement in protected activity and adverse employment action does not establish causation alone for FLSA retaliation claim); *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1191 (10th Cir. 2016) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)) (one and one-half month period between engagement in protected activity and adverse employment action may establish causation for ADA retaliation claim).

[76] Discussed *infra* at 18–22.

[77] Def. City's Mot. for Summ. J. & Br. in Supp. (Dkt. 31) at 33.

[78] *Id.*

Specific Occurrence Performance Report issued to Plaintiff that outlines the specific policies that Oklahoma City concluded that she violated based on an investigation of Plaintiff's actions.[79] Oklahoma City has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, so the burden shifts yet again back to Plaintiff.

Plaintiff must show that "there is a genuine dispute of material fact as to whether [Oklahoma City's] proffered reason[s] for the challenged action [are] pretextual—i.e., unworthy of belief."[80] The pretext inquiry "is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs."[81] Thus, the facts are viewed as they appeared to the person making the decision, and just because these facts may be erroneous or result in a decision based on poor business judgment does not mean the proffered reasons for the challenged action are pretextual.[82] Nevertheless, "[p]retext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[83]

---

[79] City of Okla. City Specific Occurrence Performance Report (SOPR) Re. Sylvia Lott (Dkt. 31-19).

[80] *Morgan*, 108 F.3d at 1323 (internal quotation omitted).

[81] *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004).

[82] *Id.*

[83] *Morgan*, 108 F.3d at 1323 (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951–52 (3d Cir. 1996)).

The Court finds that a genuine issue of material fact remains as to whether Oklahoma City's proffered reasons for terminating Plaintiff are pretextual. While some of the facts cited by Plaintiff would not lead a reasonable jury to infer pretext, others do, and there are enough to create a triable issue of fact for the jury.

Some of Plaintiff's proffered evidence of pretext fails to establish any indication that Oklahoma City's motivation for her termination was anything other than her policy violations. She first points to Hudson as a similar employee who was not terminated for committing the same conduct as Plaintiff.[84] But as this Court has already explained,[85] the evidence cited by Plaintiff does not show that Hudson ever violated policies by lying. Next, Plaintiff asserts that "based on Hudson's history, agents of Defendant knew that she had a bad temper."[86] While this may or may not be true, Plaintiff fails to explain how this leads to an inference that her termination was pretextual. She leaves the Court without an explanation as to how an inference of pretext can be drawn again with her additional assertion that "the true reason for Hudson's termination for sexual harassment is equally suspect."[87]

Some of Plaintiff's evidence, taken together, does establish a genuine dispute of material fact as to whether Oklahoma City's proffered reasons for Plaintiff's termination

---

[84] Pl. Sylvia Lott's Obj. to Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50) at 30.

[85] *See supra* at 10–13.

[86] Pl. Sylvia Lott's Obj. to Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50) at 30.

[87] *Id*. at 31.

are pretextual. Plaintiff asserts that "Defendant could not reasonably have believed that the incident mandated Plaintiff's termination" because while Captain Butler recommended Plaintiff be suspended for her policy violations, she was nevertheless presented with notice to appear at a pre-determination hearing and ultimately terminated.[88] Making all inferences in Plaintiff's favor, the Court finds that a reasonable jury could infer that since Plaintiff was terminated instead of only suspended for five days as Captain Butler recommended, Oklahoma City's proffered reasons are illegitimate and discriminatory. This point is enhanced by the fact that it was Major Nick Elias who served as the hearing officer in Plaintiff's pre-determination hearing.[89] Plaintiff cites an email thread in which he states that he and Captain Butler "will fill [Becker] in on all the harassment Jennifer [Hudson] is getting." A reasonable jury could also infer that this email demonstrates that Captain Butler, who oversaw the investigation that led to Plaintiff's termination, was biased in favor of Hudson and predisposed to disbelieve Plaintiff's version of events.

Plaintiff next asserts that pretext is demonstrated by Oklahoma's City's reliance on a witness who disputed Plaintiff's version of the January incident and who it knew was "timid, nervous, holding back information, and did not want to have anything to do with what occurred."[90] In the email, Captain Butler states that "[i]t appeared to me that [the

---

[88] *Id*. at 30.

[89] This assertion was not made in Oklahoma City's list of material facts, nor Plaintiff's, so it is unclear whether it is undisputed, but even if it is, it supports a defeat of summary judgment here.

[90] Pl. Sylvia Lott's Obj. to Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50) at 30–31 (citing Kimmel email chain (Dkt. 50-11)).

witness] could have had more information," but "I didn't want to make [the witness] more nervous than he already was so I stopped asking him questions."[91] A reasonable jury could conclude from this evidence that Oklahoma City's failure to obtain all information from a witness who was apparently withholding information shows it's basis for Plaintiff's termination is unworthy of credence and hence infer that Oklahoma City did not act for the asserted non-discriminatory reasons.

Plaintiff also argues that Lieutenant Kimmel was biased against Plaintiff (African American) and in favor of Hudson (Caucasian) because she told "Lt. Vasquez to '*stay on top of her [Plaintiff], and she needed to leave [Hudson] alone.*'"[92] Defendant argues that the evidence Plaintiff cites to support this assertion is double hearsay because it is an excerpt from Plaintiff's deposition in which she says that Lieutenant Vasquez told her that Lieutenant Kimmel said these statements.[93] Although hearsay is generally "inadmissible 'in support of, or in opposition to, summary judgment,'"[94] this statement is probably not hearsay because it is an opposing party statement[95] so the Court will consider it. The Court

---

[91] Kimmel email chain (Dkt. 50-11) at 1.

[92] Pl. Sylvia Lott's Obj. to Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50) at 30.

[93] Def. City's Reply to Pl.'s Resp. to Def. City's Mot. for Summ. J. & Br. in Supp. (Dkt. 52) at 4.

[94] *Paup v. Gear Prod., Inc.*, 327 F. App'x 100, 120 (10th Cir. 2009) (quoting *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995)).

[95] Fed. R. Evid. 801(d)(2)(D); *see, e.g., Wilson v. Budco*, 762 F. Supp. 2d 1047, 1060–61 (E.D. Mich. 2011). To fall within this exception, Lieutenant Kimmel must be an agent or employee of Oklahoma City and Lieutenant Kimmel's statement must have been made within the scope of that relationship and while it existed. Neither party argues directly on this point, so for purposes of this motion, the Court assumes the evidence supports a finding

finds that a reasonable jury could conclude from this evidence that Lieutenant Kimmel was biased against Plaintiff and thus Oklahoma City's proffered reason for Plaintiff's termination may be a pretext for unlawful discrimination.

Finally, Plaintiff argues that "Defendant's alleged reliance on video footage of the timeclock area on January 24, 2018" demonstrates pretext because "[e]vidence points to Defendant's knowledge that there are questions still remaining regarding the authenticity of the video . . . ."[96] In support, Plaintiff cites Lieutenant Kimmel's deposition to show that according to her, no chain of custody form was completed for the video footage.[97] She also cites Bryan Irwin's interview in which he mentions multiple cameras and some not working,[98] but the Court has no context for this statement and Plaintiff does not provide any via a citation. Viewing all inferences in Plaintiff's favor, the Court finds that a reasonable jury could infer from this evidence that the video footage Oklahoma City allegedly relied on in part to terminate Plaintiff was not of the relevant incident, and thus Oklahoma City's proffered reason for Plaintiff's termination may be a pretext for unlawful discrimination.

Plaintiff has established a genuine issue of material fact as to pretext, so summary judgment is denied on her retaliation claim.

---

that this exception applies. But even if it didn't the remaining evidence cited by Plaintiff supports pretext, so a genuine issue of material fact nonetheless remains.

[96] Pl. Sylvia Lott's Obj. to Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50) at 32.

[97] Depo. of Kimberly Kimmel (Dkt. 50-10) at 64–65.

[98] Interview of Bryan Irwin (OCSO), Audio Transcription (Dkt. 50-35) at 6.

*Conclusion*

Summary judgment is therefore **GRANTED** as to Plaintiff's racial discrimination/disparate treatment claim and **DENIED** as to the retaliation claim.[99]

**IT IS SO ORDERED this 25th day of February, 2020.**

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[99] The Court also notes that Plaintiff withdrew her ADAAA claim. *See* Pl. Sylvia Lott's Obj. to Def., City of Okla. City's Mot. for Summ. J. with Br. in Supp. (Dkt. 50) at 9, n. 1.